```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

_____

```
                                  X
CHARMANE SMITH,                   X
                                  X
         Plaintiff,               X
                                  X
vs.                               X        No. 09-2770-STA-tmp
                                  X
J.D. BREEN, et al.,               X
                                  X
         Defendants.              X
                                  X
```

_____

```
               ORDER CORRECTING THE DOCKET
      ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR RECUSAL
               ORDER GRANTING LEAVE TO AMEND
                   ORDER DENYING AS MOOT
         STATE FARM'S MOTION FOR A MORE DEFINITE STATEMENT
      ORDER GRANTING PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME
       ORDER GRANTING THE MOTION TO DISMISS FILED BY THE TDOS
         ORDER GRANTING THE MOTION TO DISMISS FILED BY
                   THE FEDERAL DEFENDANTS
        ORDER DISMISSING CLAIMS AGAINST NON-MOVING DEFENDANTS
                     ORDER OF DISMISSAL
          ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
       ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL
                            AND
       ORDER REAFFIRMING SANCTIONS IMPOSED IN CASE NUMBER 09-2770
```

_____

On or about October 22, 2009, Plaintiff Charmane Smith, a resident of Memphis, Tennessee, filed a pro se Civil Warrant in the General Sessions Court for the Thirtieth Judicial District at Memphis against United States District Judge J. Daniel Breen; former United States Magistrate Judge James H. Allen;[1] former United States

_____

[1]     Magistrate Judge Allen has retired.

District Judge Jerome Turner;[2] Assistant United States Attorneys Jennifer Webber and Tracy Berry; Inspectors Jimmy Knight and David Higginbotham, who are employed by the Office of Inspector General of the United States Postal Service; the Tennessee Department of Safety ("TDOS"); State Farm Insurance Company ("State Farm"); Memphis Police Department Sergeant Worden Gray; Jacqueline Watson; and Cheryl L. Dood. (Docket Entry ("D.E.") 1-1.) The Civil Warrant alleged that Plaintiff was seeking treble damages for conspiracy, violation of her constitutional rights, illegal search and seizure, theft, abuse of authority, abuse of criminal process, attempted bribery, fraud on court, illegal involuntary civil commitment, assault and battery, prosecutorial and judicial abuse, abuse of statutory laws/court procedures, and impersonation of a federal judge. (Id.) Plaintiff sought damages of less than $25,000. (Id.) The United States, on behalf of Defendants Breen, Allen, Turner, Webber, Berry, Knight, and Higginbotham (collectively, the "Federal Defendants"), removed the case to federal court, pursuant to 28 U.S.C. §§ 1441 and 1442(a), on November 25, 2009. (D.E. 1.)[3]

---

[2]     Judge Turner died in 2000.

[3]     This is one of eight cases filed by Plaintiff in state court in late 2009 and removed to federal court by the defendants. In an order entered on January 24, 2007, United States District Judge J. Daniel Breen revoked Plaintiff's ability to file any more actions without payment of the full civil filing fee. Smith v. Dell, Inc., No. 06-2496-JDB-dkv (W.D. Tenn.). That action was taken because Plaintiff had filed 15 civil actions in this district since 2003, most of which had been dismissed, sua sponte, for failure to state a claim or as frivolous. The sanctions order did not address cases filed in state court and removed to federal court. In an order issued on May 20, 2010, the sanctions imposed in case number 06-2496 were modified and expanded to include cases removed to federal court. Smith, et al. v. Federal Judges & Court Clerks, No. 09-2772-BBD-dkv (W.D. Tenn.).

(continued...)

On December 22, 2009, State Farm filed a motion seeking a more definite statement, pursuant to Fed. R. Civ. P. 12(e). (D.E. 5.) Although Plaintiff has not responded to the motion, she filed an amended complaint on December 28, 2009. (D.E. 6.) The first matter to be considered is whether Plaintiff should be allowed to amend her complaint. Pursuant to Fed. R. Civ. P. 15(a)(1)(A), a plaintiff is entitled to amend her complaint as a matter of course within fifteen (15) days of serving it.[4] Plaintiff's motion was filed beyond that time and, therefore, she is not entitled to amend as a matter of course. Therefore, Plaintiff can amend her pleading only with the opposing party's written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Plaintiff did not seek the consent of any defendant or the Court's leave before filing her amended complaint. However, because Plaintiff has recognized and attempted to cure the deficiencies in her state-court Civil Warrant, the Court finds that permitting the amendment would be in the interest of justice. Leave to amend is GRANTED. The operative pleading in this case is the

---

[3]      (...continued)
This case was originally assigned to United States District Judge Samuel H. Mays, Jr. On December 28, 2009, Plaintiff filed a motion for recusal. (D.E. 7.) Judge Mays entered an order of recusal on April 8, 2010 (D.E. 15), and the case was reassigned to this judge on April 26, 2010 (D.E. 16). Plaintiff's motion for recusal is DENIED as moot.

[4]      This amendment took effect on December 1, 2009, before Plaintiff filed her amended complaint.

amended complaint (D.E. 6).[5] Therefore, State Farm's motion for a more definite statement is DENIED as moot.[6]

By way of background, on May 20, 1996, Plaintiff was indicted on a single count of violating 18 U.S.C. § 876, which proscribes the mailing of threatening communications. United States v. Smith, No. 96-20093 (W.D. Tenn.). According to the indictment, Smith had used the mails in an attempt to extort $20 million from Russell Sugarmon, the judge in a state-court lawsuit arising from one of Smith's car accidents, and had threatened to injure the property and reputation of several people associated with the accidents, including Defendants Watson, Dood, and State Farm. On June 27, 1996, a grand jury returned a 37-count indictment against Plaintiff, charging her with violations of 42 U.S.C. § 408(a)(7) and 18 U.S.C. §§ 1029, 1341, and 1342. United States v. Smith, No. 96-20129 (W.D. Tenn.). The second indictment concerned Smith's fraudulent use of Social Security numbers, the U.S. mail, and credit

---

[5]     In the interest of expediting this matter, the Court has excused Plaintiff's failure to consult with Defendants and to file a motion seeking leave to amend in this instance only.

        The amended complaint names numerous additional persons who are not listed in the case caption. Because Plaintiff has not sought or obtained leave to add new parties, the Clerk is directed to correct the docket to terminate all persons not listed as defendants at pp. 1-2 of this order.

[6]     Perhaps recognizing that its motion is moot, State Farm answered the complaint on January 27, 2010. (D.E. 10.)

        Although the amended complaint contains factual allegations against persons who were not named as parties in Plaintiff's original complaint, none of these individuals are listed in the case caption of the amended complaint. Plaintiff has been permitted to file an amended complaint to satisfy the requirements of the Federal Rules of Civil Procedure, but she may not add new parties sub silentio. The Clerk is directed to terminate all parties listed on the docket who are not listed on pp. 1-2 of this order.

and charge card "access devices." Both cases were dismissed without prejudice on October 9, 1998, pursuant to 18 U.S.C. § 4246, because Smith was found incompetent to stand trial. Smith was committed to the custody of the U.S. Attorney General. The United States Court of Appeals for the Sixth Circuit affirmed. United States v. Smith, No. 98-6454, 2000 WL 282478 (6th Cir. Mar. 9, 2000), cert. denied, 531 U.S. 852 (2000).

The factual basis for the criminal charges against Plaintiff is stated in the Sixth Circuit's opinion:

> In the summer of 1990, Smith was involved in two automobile accidents while driving without insurance. In the following years, Smith allegedly sent threatening letters to several people involved in the accidents. The letters generally were directed at the individuals' credit and finances, but some of the letters threatened bodily harm. In addition to sending threatening letters, Smith allegedly compromised the credit of several individuals by filling out credit card applications and ordering products from mail-order companies in their names. Several of the victims testified to expending substantial time and effort in clearing their credit records.

Id. at *1.

On July 1, 2003, Judge Breen granted Plaintiff's motion for a conditional release from incarceration. On January 2, 2004, and January 5, 2004, warrants were issued for Plaintiff's arrest because she had allegedly violated the terms of her conditional release requiring her to participate in supportive services and take all medication prescribed by the treating facility. On January 26, 2004, Judge Breen conducted a hearing on the revocation of Plaintiff's conditional release, at which Plaintiff's release was revoked and she was committed to the custody of the Attorney General

5

pursuant to 18 U.S.C. § 4246(f). On May 3, 2004, Plaintiff, through counsel, filed a certificate of recovery and a motion for discharge. After hearings on May 3, 2004, and May 11, 2004, Judge Breen ordered that Plaintiff remain on release on the previous conditions for one year. An order to that effect was entered on October 21, 2004.

Plaintiff's amended complaint alleges that, in June of 1990, Defendant Watson, a customer of Defendant State Farm, committed an intentional tort by sideswiping Plaintiff's car. After the accident, Defendant Watson allegedly moved her car out of its incriminating position to conceal that she was at fault. (Am. Compl., ¶ 2.) In July of 1990, Defendant Dood, a customer of State Farm, committed an intentional tort by colliding with Plaintiff's car. After the accident, Defendant Dood allegedly lied to the police and failed to admit that she was at fault. (Id., ¶ 3.) Plaintiff contends that Defendants Watson and Dood conspired with Defendant Gray and nonparty Judge James A. Sugarmon a/k/a Russell Sugarmon to commit insurance fraud and to obtain judgments through collusion and possibly bribery. (Id., ¶ 4.) The allegations against Defendant State Farm are as follows:

> 5.   Defendant State Farm Insurance is alleged to have participated in and/or condoned collusion and/or conspiracy to violate my Due Process Right and Right to Fair Compensation with This Court and with Defendants A.D.A. Berry, Judge James A. Sugarmonn [sic], State Farm Insurance employees, and its insured customers, Defendants Watson and Dood by condoning, relying upon (to illegally evade civil liability), and failing to report the fraud on court that was committed by the other Defendants.

> Defendant State Farm Insurance is also liable for the actions of its employees and its insured customers before the court proceedings began during which the insured customers, Watson and Dood, were allowed to sue me without notice and State Farm Insurance's Subrogation Unit attempted to collect their insurance costs from me, illegally, on invalid judgments.

(Id., ¶ 5.) The amended complaint further alleges that state court judges Robert A. Lanier and Robert L. Childers, who are not parties to this action, had Plaintiff civilly committed to the Memphis Mental Health Institute in 1994 to intimidate and silence her concerning the hearing presided over by Judge Sugarmon, even though she was not incompetent. (Id., ¶ 6.)

In 1994, Defendants Knight and Higginbotham illegally searched Plaintiff's belongings, without a warrant or her consent, while she was living with her mother in Memphis. Defendants Knight and Higginbotham committed theft by failing to return video tapes, books, and CDs that were confiscated. They also attempted to bribe Plaintiff by buying her lunch at a Captain D's restaurant to avoid a complaint about the illegal search. Defendants Knight and Higginbotham allegedly conspired with Defendants Webber and Berry to obtain false and fraudulent indictments, without a grand jury, against Plaintiff to intimidate and oppress her and to illegally detain her in pretrial imprisonment. (Id., ¶ 7.)

Defendant Berry allegedly fabricated two indictments against Plaintiff without a grand jury, fabricated evidence against Plaintiff, and concealed an allegedly invalid indictment obtained by Defendant Webber. (Id., § 8.) Defendants Berry, Turner, Breen, and

Allen, and nonparty federal judges Odell Horton[7] and James D. Todd coerced five forensic psychologists to diagnose Plaintiff as incompetent and insane in order to have her civilly committed under false pretenses. During Plaintiff's criminal hearings, Defendants Watson and Dood and unidentified employees of Defendant State Farm allegedly offered false testimony. (Id.) Defendants Turner, Breen, Allen, and Berry, and nonparty judges Horton and Todd, allegedly placed false and defamatory information in Plaintiff's criminal history file to place her in a false light and to induce prison officials, healthcare professionals, and court officials to view Plaintiff as dangerous. (Id.) These defendants also abused 18 U.S.C. §§ 4241, 4243, and 4246, to illegally prolong Plaintiff's imprisonment, to inflict cruel and unusual punishment, and to cause emotional pain and suffering. (Id., ¶ 9.) Defendants Turner, Breen, and Allen are also alleged to have allowed Judges Horton, Robert L. Childers, and Robert A. Lanier to impersonate federal judges at criminal hearings between 1996 and Plaintiff's final release from prison in July of 1994 [sic]. (Id., ¶ 10.)[8] Defendants Turner, Breen, Allen, and Berry, and nonparty Judges Horton and Todd, allegedly are not entitled to judicial or prosecutorial immunity because they "committed abuse of power, malicious prosecution, abuse of discretion conspiracy, multiple civil and Constitutional rights,

---

[7]     Judge Horton died in 2006.

[8]     Plaintiff previously alleged that Judges Childers and Lanier were state-court judges. (See id., ¶ 6.)

fraud on court, prosecutorial misconduct, and collusion." (<u>Id.</u>, ¶ 11.) According to Plaintiff,

> [a]s a result of being the victim of the fraud and conspiracy of all Defendants complained of, I was held in prison, illegally, for 7.5 years, am currently difficult to employ and have been relieved of one job because of my criminal history, was hospitalized in a coma with pneumonia, Diabetes, high blood pressure, and severe weight gain for a month, presently suffer chronic yeast infections, have problems with my eyes (all medical conditions were caused by ingestion of forced psychotropic medicating and medications), am unable to support myself financially, and have been repeatedly and illegally deprived of justice and financial restitution for lawsuits filed.
>
> Because of the corruption of the Defendants, my goal of obtaining engineering and medical degrees were [sic] interrupted and remain unaccomplished due to the interference of my continued education and diminished employability caused by my illegal imprisonment and my current and false criminal record.

(<u>Id.</u>, ¶ 12.) Plaintiff seeks money damages in the amount of $850 million, the expungement of her criminal records, the rescission of all judgments barring her from filing lawsuits and appeals in federal court, and the rescission of all judgments entered by Defendants Breen and Turner dismissing suits filed by her. (D.E. 1 at 5-6.)

On December 29, 2009, the TDOS filed a motion to dismiss the complaint against it, pursuant to Fed. R. Civ. P. 12(b)(1). (D.E. 8.) On January 21, 2010, Plaintiff filed a motion seeking an additional forty-five (45) days to respond to the motion. (D.E. 9.) For good cause shown, that motion is GRANTED. The requested time has

expired, and Plaintiff has not responded to the motion to dismiss. The Court will, therefore, consider the motion on the merits.[9]

Even if the TDOS had not filed a motion to dismiss, the Court would dismiss the claims against it, <u>sua sponte</u>, because it is not named in the amended complaint, which is the operative pleading in this matter. When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle [her] to relief." <u>Spruytte v. Walters</u>, 753 F.2d 498, 500 (6th Cir. 1985).

Even if Plaintiff were to submit a second amended complaint that named the TDOS, the TDOS would be entitled to dismissal for the reasons stated in its motion. Plaintiff's original complaint purported to assert claims for violations of Plaintiff's constitutional rights and various state-law torts, and her amended complaint asserted claims under, <u>inter alia</u>, 42 U.S.C. § 1983, which provides a right of action against state officials who violate a plaintiff's rights under the U.S. Constitution or federal law. Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment

---

[9]     Pursuant to Local Rule 7.2(a)(2), the Court is not authorized to grant a dispositive motion solely because a party has failed to respond. Similarly, the Sixth Circuit has held that it is an abuse of discretion for a district court to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) solely because the plaintiff failed to respond to a motion to dismiss unless the failure rises to the level of a failure to prosecute. <u>Carver v. Bunch</u>, 946 F.2d 451, 453-54 (6th Cir. 1991). In this case, there is no basis to conclude that Plaintiff's failure to respond amounts to a failure to prosecute. Ordinarily, the Court issues a show cause order when a <u>pro se</u> litigant fails to respond to a dispositive motion. The Court has not issued an order to show cause in this case and declines to do so because it is clear that the TDOS's motion to dismiss should be granted and the complaint against it should be dismissed with prejudice.

10

prohibits suits for damages against a state in federal court. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984); Quern v. Jordan, 440 U.S. 332 (1979). The TDOS is an agency of the State of Tennessee. See Tenn. Code Ann. § 4-3-101(18). Tennessee has not waived its sovereign immunity. Tenn. Stat. Ann. § 20-13-102(a). A state also cannot be liable under § 1983 because it is not a "person" subject to the statute. Lapides v. Board of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Will v. Michigan, 491 U.S. 58, 71 (1989). Therefore, the Court GRANTS the motion of the TDOS to dismiss the complaint against it, to the extent it purports to assert a claim under 42 U.S.C. § 1983.

The TDOS has also moved to dismiss any state-law claims asserted against it on the ground of sovereign immunity. (D.E. 8-1 at 4-5.) Under the Tennessee Constitution, "suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const., art. I, § 17. No suit against the State may be brought absent express authorization by the legislature. Coffman v. Pulaski, 220 Tenn. 642, 422 S.W.2d 429 (1967). Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Certain claims may be brought before the Tennessee Claims Commission. See Tenn. Code Ann. § 9-8-301. The Tennessee legislature has not authorized suits against the State for damages in federal court. Therefore, the Court GRANTS the TDOS's

motion to dismiss the complaint against it, to the extent it purports to assert a claim under state law.

The fact that the claims against the TDOS are barred by sovereign immunity is a defect that cannot be cured by amendment. Therefore, the Court DISMISSES the complaint against the TDOS WITH PREJUDICE.

On March 26, 2010, the Federal Defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 4(m) and Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6). (D.E. 14.) Plaintiff did not respond to the motion, and the time for a response has expired. The Court will, therefore, address the motion on the merits.[10]

The Federal Defendants argue that the complaint should be dismissed for failure to state a claim on which relief may be granted. (D.E. 14-1 at 5-10.)[11] The standard for assessing a Rule 12(b)(6) motion is as follows:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the

---

[10]    The Court declines to issue a show cause order because it is clear the motion to dismiss should be granted and the complaint against the Federal Defendants dismissed with prejudice. See supra p. 10 n.9.

[11]    The Federal Defendants first argue that the complaint should be dismissed for want of personal jurisdiction, under Fed. R. Civ. P. 4(m) and Fed. R. Civ. P. 12(b)(2) & (5), because Plaintiffs have not effected service on them. (D.E. 14-1 at 4-5.) This argument is not well taken. Pursuant to 28 U.S.C. § 1447(a), after removal "the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State courts or otherwise." It is the practice in this district that process will not issue on a pro se complaint without an order of the Court. See Local Rule 83.7(a)(3). The Court has not scheduled a conference in this case because of the pendency of the various dispositive motions. Had the complaint been sufficient to withstand a motion to dismiss, the Court would have ordered the Clerk to issue process. This aspect of the Federal Defendants' motion to dismiss is DENIED.

pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," <u>Conley v. Gibson</u>, 355 U.S. 41, 47 . . . (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, <u>ibid.</u>; <u>Sanjuan v. American Bd. of Psychiatryand Neurology, Inc.</u>, 40 F.3d 247, 251 (C.A. 7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see <u>Papasan v. Allain</u>, 478 U.S. 265, 286 . . . (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, <u>e.g.</u>, <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508, n. 1, . . . (2002); <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 . . . (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 . . . (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 555-56 (2007) (footnote omitted). The Supreme Court explained that the notice pleading rules do not eliminate a plaintiff's obligation to set forth some factual basis for her claims:

While, for most types of cases, the Federal Rules [of Civil Procedure] eliminated the cumbersome requirement that a claimant "set out <u>in detail</u> the facts upon which he bases his claim," <u>Conley v. Gibson</u>, 355 U.S. 41, 47 . . . (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only the "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. See 5 Wright & Miller § 1202, at 94, 95 (Rule

8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it").

Id. at 556 n.3.

Twombly was an antitrust case and, after the issuance of that decision, some courts assumed that the requirement that a litigant plead the factual basis for her claims was applicable primarily to complex litigation.[12] However, the Supreme Court recently extended the principles stated in Twombly to a civil rights claim under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1974). In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court stated as follows:

[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then

---

[12] See, e.g., United States v. Ford Motor Co., 532 F.3d 496, 503 n.6 (6th Cir. 2008); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96, 296 n.1 (6th Cir. 2008). In so holding, the Sixth Circuit was attempting to reconcile Twombly with Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), which was decided two weeks after Twombly. In Erickson, the Supreme Court vacated the dismissal of a lawsuit brought by a prisoner suffering from hepatitis C who alleged that he had received inadequate medical treatment when he was terminated from a treatment program. The district court dismissed the complaint for failure to state a claim, and the Tenth Circuit Court of Appeals affirmed, holding that the prisoner's allegations of injury were conclusory. The Supreme Court observed that this "holding departs in so stark a manner from the pleading standard mandated by the Federal Rules of Civil Procedure that we grant review." 551 U.S. at 90. The prisoner had alleged that he had hepatitis C, that he met the prison's standards for treatment of the disease, and that furtherance of the disease can cause irreversible damage to his liver and even death. Id. at 91-92; see also id. at 94. In holding that the prisoner's allegations of harm were sufficient to satisfy Rule 8(a)(2), the Supreme Court emphasized the liberal pleading standard of Fed. R. Civ. P. 8(a)(2) and the plaintiff's pro se status. Id. at 93-94. The Supreme Court also noted that it was not deciding that the prisoner's case was sufficient in all respects to survive a motion to dismiss but, rather, only that the allegations of injury were sufficient to satisfy Rule 8(a)(2). Id. at 93, 94.

determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950. Applying those standards, the Supreme Court held that the plaintiffs had not adequately alleged that the moving defendants had purposely discriminated against them on the basis of their religion. Id. at 1950-52.

Plaintiff's status as a pro se litigant does not absolve her from the requirements of the Federal Rules of Civil Procedure. As the Sixth Circuit has explained:

> Before the recent onslaught of pro se prisoner suits, the Supreme Court suggested that pro se complaints are to be held to a less stringent standard than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519 . . . (1972) (per curiam). Neither that Court nor other courts, however, have been willing to abrogate basic pleading essentials in pro se suits. See, e.g., id. at 521 . . . (holding petitioner to standards of Conley v. Gibson); Merritt v. Faulkner, 697 F.2d 761 (7th Cir.) (duty to be less stringent with pro se complaint does not require court to conjure up unplead [sic] allegations), cert. denied, 464 U.S. 986 . . . (1983); McDonald v. Hall, 610 F.2d 16 (1st Cir.1979) (same); Jarrell v. Tisch, 656 F. Supp. 237 (D.D.C. 1987) (pro se plaintiffs should plead with requisite specificity so as to give defendants notice); Holsey v. Collins, 90 F.R.D. 122 (D. Md. 1981) (even pro se litigants must meet some minimum standards).

Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Lindsay v. Owens Loan, No. 08-CV-12526, 2008 WL 2795944, at *1 (E.D. Mich. July 18, 2008) ("While pro se litigants should not be held to the same stringent standard as licensed attorneys who draft pleadings . . ., it is also not the role of the court to speculate about the nature of the claims asserted."); Reeves v. Ratliff, No. Civ.A.05CV112-HRW, 2005 WL 1719970, at *2 (E.D. Ky. July 21, 2005) ("Judges are not required to construct a [pro se] party's legal

Case 2:09-cv-02770-STA-tmp   Document 17   Filed 06/21/10   Page 16 of 36   PageID 114

arguments for him."); <u>United States v. Kraljevich</u>, No. 02-40316, 2004 WL 1192442, at *3 (E.D. Mich. Apr. 15, 2004); <u>Payne v. Secretary of Treas.</u>, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming <u>sua sponte</u> dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2); "Neither this court nor the district court is required to create Payne's claim for her."); <u>cf.</u> <u>Pliler v. Ford</u>, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to <u>pro se</u> litigants."). Thus, in <u>Erickson v. Pardus</u>, 551 U.S. at 127 S. Ct. 2197 (2007), the <u>pro se</u> prisoner's complaint contained detailed factual allegations, and supporting documents, detailing the factual basis for his claims and the manner in which he contends the defendants were deliberately indifferent to his serious medical needs. <u>Id.</u> at 90-92, 94.

The Federal Defendants first argue that, to the extent the complaint purports to state a claim under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1974), it is time barred. (D.E. 14-1 at 6-7.) The complaint, on its face, does not mention <u>Bivens</u> and, instead, purports to assert claims under 42 U.S.C. §§ 1983, 1985(2) & (3), and 1986. (D.E. 6 at 1.)[13] The Federal Defendants appear to assume that, because they cannot be sued under 42 U.S.C. § 1983, which provides a right of action against state officials who violate a plaintiff's rights under the U.S. Constitution or federal law,[14]

_____

[13]   The other federal statutes mentioned in the amended complaint are jurisdictional provisions.

[14]   The Federal Defendants do not act under color of state law and, therefore, cannot be sued under § 1983. <u>Franklin v. Henderson</u>, No. 00-4611, 2000
(continued...)

16

the Court should construe Plaintiff's claims against them as arising under <u>Bivens</u>, which provides a right of action against federal employees who violate a Plaintiff's rights under the U.S. Constitution.

A one-year statute of limitations is applicable to <u>Bivens</u> actions brought in Tennessee. <u>Mason v. Department of Justice</u>, 39 F. App'x 205, 207 (6th Cir. 2002); <u>see also</u> <u>Merriweather v. City of Memphis</u>, 107 F.3d 396, 398 n.1 (6th Cir. 1997) ("In federal constitutional tort actions, the court borrows the statute of limitations for personal torts from the state where the claim arose—here, Tennessee."). In this case, the most recent relevant actions by any defendant occurred no later than 2005, when Plaintiff's conditional release expired. This action was commenced more than four years later, and any <u>Bivens</u> claim is time barred.[15] This aspect of the Federal Defendants' motion to dismiss is GRANTED.[16]

---

[14]     (...continued)
WL 861697, at *1 (6th Cir. June 20, 2001) ("The federal government and its officials are not subject to suit under 42 U.S.C. § 1983."); <u>Habtemariam v. Adrian</u>, No. 98-3112, 1999 WL 455326, at *2 (6th Cir. June 23, 1999); <u>Johnson v. Ionia United States Postal Serv.</u>, Nos. 90-1078, 90-1313, 1990 WL 115930, at *1 (6th Cir. Aug. 10, 1990); <u>Walber v. United States Dep't of Housing & Urban Dev.</u>, No. 88-1984, 1990 WL 19665, at *2 (6th Cir. Mar. 5, 1990); <u>Nghiem v. U.S. Dep't of Veterans Affairs</u>, 451 F. Supp.2d 599, 604-05 (S.D.N.Y. 2006); <u>Rackham v. Department of Veterans Affairs</u>, No. Civ.A. 7:03CV00574, 2004 WL 385026, at *1 (W.D. Va. Mar. 1, 2004).

[15]     The prayer for relief refers to lawsuits filed by Plaintiff that were dismissed by Federal Defendants, but Plaintiff has not identified any such lawsuit or set forth any facts that the dismissal of some other suit is actionable.

[16]     The motion to dismiss did not address the timeliness of Plaintiff's claims under 42 U.S.C. §§ 1985(2) & (3) and 1986. A one-year statute of limitations applies to those claims, <u>Moore v. Potter</u>, 47 F. App'x 318, 320 (6th Cir. 2002); <u>Bowden v. City of Franklin</u>, 13 F. App'x 266, 272-73 (6th Cir. 2001); <u>Bibbs v.</u>
(continued...)

Next, the Federal Defendants argue that the amended complaint does not adequately state a plausible claim against them. (D.E. 14-1 at 7-8.) The Federal Defendants are correct that the allegations of the complaint, read in light of the factual background and Plaintiff's lengthy litigation history,[17] strongly suggest that Plaintiff's claims are "clearly baseless," "fanciful," "fantastic," or "delusional." <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." <u>Id.</u> at 33. The suggestion that federal postal inspectors, assistant United States Attorneys, and federal judges and magistrate judges concocted two federal criminal prosecutions of Plaintiff, in some sort of conspiracy with a state-court judge and with private individuals who had automobile accidents involving Plaintiff, is factually frivolous.

Plaintiff's claims against the Federal Defendants assume that she was wrongly committed, yet the Sixth Circuit affirmed Plaintiff's civil commitment on direct appeal, stating as follows:

> Under 18 U.S.C. § 4246(d), a district court may commit a person who has been committed to the custody of the Attorney General pursuant to § 4241(d), as Smith was

---

[16]    (...continued)
<u>Parkridge Hosp., Inc.</u>, 4 F. App'x 243, 244-45 (6th Cir. 2001); <u>Green v. Memphis City Gov't</u>, No. 03-2991-Ml/V, at *7-*8 (W.D. Tenn. Aug. 30, 2005), and, therefore, those claims are also time barred.

[17]    That history is summarized in <u>Smith v. Spitzer</u>, 531 F. Supp. 2d 360, 361-62 (N.D.N.Y. 2008); <u>see also</u> 05/20/2010 Order at 4 n.3, 19-21, <u>Smith v. Federal Judges & Court Clerks</u>, No. 09-2772-BBD-dkv (W.D. Tenn.).

in this case, if it "finds by clear and convincing
evidence that the person is presently suffering from a
mental disease or defect as a result of which [her]
release would create a substantial risk of bodily injury
to another person or serious damage to property of
another." 18 U.S.C. § 4246(d). On appeal, Smith argues
that the district court erred in finding that her release
would create a substantial risk of serious damage to the
property of another. Smith argues that the risk posed by
her release is not "substantial" and that any damage she
might cause would not be "serious."

                . . . .

        First, we note that the parties do not dispute the
fact that Smith is presently suffering from a mental
disease or defect. See 18 U.S.C. § 4246(d). More to the
point, the district court's finding that Smith's release
would create a substantial risk of serious damage to the
property of Smith's victims is not clearly erroneous.
Smith's most recent psychological evaluation found that,
"[Smith's] release would create a substantial risk of
serious damage to the property of another." Judge Russell
Sugarmon, the judge who presided over the case growing
out of one of Smith's accidents, testified that Smith made
several mail orders and charges in his name, and that his
staff spent approximately two weeks attempting to clear
his credit record. Ginger Ambrose, who worked at an
insurance agency that attempted to collect from Smith in
relation to one of the accidents, testified that Smith
sent her letters threatening to ruin her credit history
and damage her career. She also testified that Smith
applied for and received credit cards in her name, and
that she now must repeatedly contact several credit
bureaus in order to maintain a fraud alert associated with
her credit record. Cheryl Dood, who was involved in one of
Smith's accidents, testified to difficulty in using her
own credit cards and in obtaining new credit cards and
credit reports on account of Smith's fraudulent actions.
Dood also described receiving "[e]xtremely threatening"
letters from Smith, and being detained by security
personnel in a department store because of problems with
a credit card caused by Smith. Smith's mother testified
that she attempted to stop Smith's credit card activity,
but that Smith responded to her unsuccessful efforts by
becoming angry and "start[ing] a fit."

        The district judge also observed behavior indicating
that Smith's release would pose a substantial risk of
serious harm to property. When the government asked Judge

> Sugarmon at Smith's evidentiary hearing if he recalled a
> letter from Smith threatening to have "kinky things" sent
> to him, Smith burst out laughing. When Dood began to
> testify that "there was a traffic accident" involving her
> and Smith, Smith interrupted her, exclaiming, "[i]t wasn't
> an accident, you—." While Smith's case was before the
> magistrate judge, Smith's continued contact with and
> harassment of potential witnesses in her case compelled
> the judge to order Smith transferred, and to restrict her
> outgoing mail and telephone calls to her attorney and
> parents. All of these events, as well as the testimony at
> Smith's evidentiary hearing, permitted the district judge
> to find that Smith's release would create a substantial
> risk of serious damage to property pursuant to § 4246(d).

United States v. Smith, 2000 WL 282478m at *2, *3. Moreover, in

summarizing the evidence presented at the commitment hearing, the

Sixth Circuit cited reports by the Carswell Federal Medical Center

that "Smith suffered from a delusional disorder which caused her to

believe that her 1990 auto accidents and current legal situation

were part of a conspiracy perpetrated by the people involved in the

accidents and the people involved in her legal proceedings,

including her own attorney." Id. at *1. These medical reports lend

support to the Court's conclusion that the claims asserted in this

suit are factually frivolous, because it appears that the delusion

Plaintiff suffered from during the pendency of these criminal cases

has recurred.

Moreover, Plaintiff cannot sue for money damages based on

a false imprisonment claim because no court has held that she was

unlawfully detained. As the Supreme Court has explained:

> We hold that, in order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for other
> harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on

> direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such
> determination, or called into question by a federal
> court's issuance of a writ of habeas corpus, 28 U.S.C. §
> 2254. A claim for damages bearing that relationship to a
> conviction or sentence that has not been so invalidated is
> not cognizable under § 1983. Thus, when a state prisoner
> seeks damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff
> would necessarily imply the invalidity of his conviction
> or sentence; if it would, the complaint must be dismissed
> unless the plaintiff can demonstrate that the conviction
> or sentence has already been invalidated. But if the
> district court determines that the plaintiff's action,
> even if successful, will not demonstrate the invalidity of
> any outstanding criminal judgment against the plaintiff,
> the action should be allowed to proceed, in the absence of
> some other bar to the suit.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (footnotes omitted).

Thus, a prisoner has no cause of action under § 1983 if the claims

in that action hinge on factual proof that would call into question

the validity of a state court order directing her confinement unless

and until any prosecution is ended in her favor, an existing

conviction is set aside, or the confinement is declared illegal. Id.

at 481-82; Schilling v. White, 58 F.3d 1081, 1086 (6th Cir. 1995).

None of these events have occurred. Therefore, Plaintiff cannot sue

any of the Federal Defendants on a theory that she was wrongly

committed and wrongly denied release.

Next, the Federal Defendants argue that the claims against

Defendants Breen, Allen, and Turner are barred by judicial immunity.

(D.E. 14-1 at 8-10.) Federal judges and magistrate judges are

entitled to absolute judicial immunity for acts taken in their

judicial capacities. See Mireles v. Waco, 502 U.S. 9, 12 (1991) (per

curiam); Stump v. Sparkman, 435 U.S. 349, 359-60 (1978); Pierson v.

21

Ray, 386 U.S. 547, 553-54 (1967); DePiero v. City of Macedonia, 180 F.3d 770, 783-84 (6th Cir. 1999); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997); King v. Love, 766 F.2d 962, 965 (6th Cir. 1985).[18]

Plaintiff alleges, in ¶ 11 of her Amended Complaint, that Defendants Breen, Allen, and Turner are not entitled to judicial immunity because they "have committed abuse of power, malicious prosecution, abuse of discretion, conspiracy, multiple civil and Constitutional rights [sic] fraud on court, prosecutorial misconduct, and collusion." Plaintiff's allegations are insufficient to defeat absolute judicial immunity. As the Supreme Court has explained:

> [T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him. . . . [T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of jurisdiction because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."

Stump v. Sparkman, 435 U.S. at 356-57 (citation omitted). Under 18 U.S.C. § 3231, federal courts have subject-matter jurisdiction over prosecutions for violations of the federal criminal laws. Plaintiff makes no argument that the actions of Defendants Allen, Breen, and Turner were taken in the clear absence of all jurisdiction.

_____

[18]    This immunity extends to any claims against Defendants Breen, Allen, and Turner under Tennessee law. Cashion v. State, No. 01A01-9903-BC-00174, 1999 WL 722634, at *3-*5 (Tenn. Ct. App. Sept. 17, 1999); Heath v. Cornelius, 511 S.W.2d 683 (Tenn. 1974).

Plaintiff's allegations of misconduct are entirely conclusory and do not go to jurisdiction.[19] Therefore, the Court GRANTS the Federal Defendants' motion to dismiss the complaint against Defendants Breen, Allen, and Turner, as barred by absolute judicial immunity.

The Federal Defendants also argue that the claims against Defendants Webber and Berry are barred by absolute prosecutorial immunity. (D.E. 14-1 at 10-11.) The allegations against Defendant Webber and Berry are that they obtained indictments against Plaintiff without a grand jury. (Am. Compl., ¶ 8.) Defendant Berry also allegedly fabricated evidence, suborned perjury, and conspired to have Plaintiff committed to a psychiatric facility. (Id.)

Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." See, e.g., Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). As the Sixth Circuit has explained:

> Under the Bivens line of cases, the Supreme Court has recognized a cause of action against federal officials for certain constitutional violations when there are no alternative processes to protect the interests of the plaintiff and no special factors counseling against recognizing the cause of action. Wilkie[ v. Robbins, 551 U.S. 537, 550, 127 S. Ct. 2588 (2007)]. On the other hand, government officials generally enjoy a presumption of

---

[19]     Although Judge Sugarmon is not a party to this action, the Sixth Circuit has held that "a judge's instigation of a criminal investigation against a disgruntled litigant, taken to protect the integrity of the judicial system, is a 'judicial act' and therefore entitled to absolute judicial immunity." Barrett v. Harrington, 130 F.3d 246, 257 (6th Cir. 1997); see also id. at 259, 260 ("[B]ecause Harrington dealt with Barrett in her judicial capacity, and because we find that a judge instigating a criminal investigation against a disgruntled litigant who has harassed her is a judicial act, we find that Judge Harrington is entitled to absolute judicial immunity regarding her statements to prosecuting authorities.").

qualified immunity from civil lawsuits, such that they are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)) (internal quotation marks omitted). Furthermore, officials enjoy absolute immunity from civil liability related to their performance of "prosecutorial" functions. See Burns v. Reed, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991). The burden of proof is on the official seeking absolute immunity, however, to prove that the behavior in question falls in the category of behavior that merits this higher level of protection. Id.

In Burns v. Reed, the Supreme Court mandated that courts use a "functional approach" when determining whether a government official's actions fit within the category of actions traditionally entitled to absolute immunity. Id. Using this approach, courts must look to "the nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). Functions that serve as an "integral part of the judicial process" or that are "intimately associated with the judicial process" are absolutely immune from civil suits. Imbler v. Pachtman, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). Meanwhile, functions which are more "investigative" or "administrative" in nature, because they are more removed from the judicial process, are subject only to qualified immunity. Burns, 500 U.S. at 486, 111 S. Ct. 1934. Although "[t]he line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw," Zahrey v. Coffey, 221 F.3d 342, 347 (2d Cir. 2000), we are not without some guidance to help determine where that line should be drawn. For example, conduct by a prosecutor that is nonetheless investigative or administrative in function includes: "giving legal advice to police," Spurlock v. Thompson, 330 F.3d 791, 798 (6th Cir. 2003); making "out-of-court statements" at a press conference, Buckley v. Fitzsimmons, 509 U.S. 259, 277–78, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993); making statements "in an affidavit supporting an application for an arrest warrant," Kalina v. Fletcher, 522 U.S. 118, 119, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997); and "authorizing warrantless wiretaps in the interest of national security," Mitchell, 472 U.S. at 520, 105 S. Ct. 2806. On the other hand, prosecutors have

24

absolute immunity from "suits for malicious prosecution and for defamation, and . . . this immunity extend[s] to the knowing use of false testimony before the grand jury and at trial." Burns, 500 U.S. at 484, 111 S. Ct. 1934. Likewise, they have absolute immunity for the following actions: appearances at probable cause and grand jury hearings, Spurlock, 330 F.3d at 797; evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings, id.; and preparation of witnesses for trial, id.

Finally . . . , prosecutors have absolute immunity from civil liability for the non-disclosure of exculpatory information at trial. Imbler, 424 U.S. at 431 n. 34, 96 S. Ct. 984. In Imbler, the Supreme Court equated the non-disclosure of exculpatory information with the use of perjured testimony and ruled that evidence suppression should be equally protected by absolute immunity. Id. Even though such behavior is "reprehensible, warranting criminal prosecution as well as disbarment," the Court found that allowing civil actions for such allegations would "weaken the adversary system at the same time it interfered seriously with the legitimate exercise of prosecutorial discretion." Id.

Koubriti v. Convertino, 593 F.3d 459, 466-67 (6th Cir. 2010).

Applying these standards to Plaintiff's claims against Defendants Webber and Berry, it is clear that a prosecutor's role in obtaining indictments is an integral part of the judicial process and, thus, protected by absolute immunity.[20] With one possible exception, the assertions that Defendant Berry fabricated evidence, suborned perjury, and conspired to have Plaintiff committed to a psychiatric facility concern actions taken by a prosecutor in the course of litigating a federal criminal case. Each of these alleged

---

[20]   Plaintiff's bald assertions that the indictments were obtained without grand juries is factually false and is contradicted by the opinion of the Sixth Circuit on direct appeal, which stated that "a federal grand jury charged Smith with one count of [violating] 18 U.S.C. § 876" and that "a grand jury indicted Smith with thirty-seven additional counts." United States v. Smith, 2000 WL 282478, at *1.

acts is protected by absolute immunity. The only possible exception is the allegation that Defendant Berry "[f]abricated evidence against [Plaintiff] in the form of a letter that Defendant Berry claimed was an attempt to solicit information about the Plaintiffs [sic] of [her] criminal proceedings from the F.B.I. office located in Virginia." (Am. Compl., ¶ 8(c).) Although that allegation is too vague to ascertain what Defendant Berry is supposed to have done, it appears that her alleged conduct may have been investigatory in nature and, therefore, protected only by qualified immunity.[21] Therefore, with the sole exception of Plaintiff's claim against Defendant Berry concerning the letter to the FBI office, the Court GRANTS the Federal Defendants' motion to dismiss the claims against Defendants Webber and Berry as barred by absolute prosecutorial immunity.

Finally, the Federal Defendants argue that Defendants Knight and Higginbotham are protected by qualified immunity. (D.E. 14-1 at 13-15.) "Governmental officials performing discretionary functions generally are shielded from liability for civil damages in so far as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

---

[21]     The complaint also alleges that Defendant Berry allegedly aided and abetted the illegal arrest of Plaintiff (Am. Compl., ¶ 8(d)), but, again, it is not clear precisely what Defendant Berry is alleged to have done. Notably, the complaint does not allege that Defendant Berry had any role in the allegedly unlawful search and seizure. It appears likely, then, that this allegation refers to Defendant Berry's role, with Defendant Webber, in obtaining indictments against Plaintiff.

> A court required to rule upon the qualified immunity
> issue must consider . . . this threshold question: Taken
> in the light most favorable to the party asserting the
> injury, do the alleged facts show the officer's conduct
> violated a constitutional right? This must be the initial
> inquiry. . . .
>
> If no constitutional right would have been violated
> were the allegations established, there is no necessity
> for further inquiries concerning qualified immunity. On
> the other hand, if a violation could be made out on a
> favorable view of the parties' submissions, the next,
> sequential step is to ask whether the right was clearly
> established. This inquiry, it is vital to note, must be
> undertaken in the specific context of the case, not as a
> broad general proposition.

Saucier v. Katz, 533 U.S. 194, 201 (2001) (citation omitted).[22]

"Qualified immunity shields an officer from suit when she makes a

decision that, even if constitutionally deficient, reasonably

misapprehends the law governing the circumstances she confronted."

Brousseau v. Haugen, 543 U.S. 194, 198 (2004); see also Dunigan v.

Noble, 390 F.3d 486, 491 (6th Cir. 2004) ("In other words, where a

constitutional violation exists, an officer's personal liability

turns on the 'objective legal reasonableness' of the action in view

of the circumstances the officer confronted assessed in light of

'clearly established' legal rules.") (citing Saucier, 533 U.S. at

201).

---

[22]    In Pearson v. Callahan, 129 S. Ct. 808 (2009), the Supreme Court held
that,

> while the sequence set forth there is often appropriate, it should no
> longer be regarded as mandatory. The judges of the district courts and
> the courts of appeals should be permitted to exercise their sound
> discretion in deciding which of the two prongs of the qualified
> immunity analysis should be addressed first in light of the
> circumstances in the particular case at hand.

Id. at 818.

The amended complaint alleges that Defendants Knight and Higginbotham conducted an illegal search, without a warrant or the consent of Plaintiff, that they failed to return videotapes, books, and CDs that were confiscated, that they bought Plaintiff lunch on a single occasion, and that they solicited Defendant Berry to fabricate false indictments against Plaintiff. (Am. Compl., ¶ 7.)

The motion filed by the Federal Defendants does not clearly address Plaintiff's claims against Defendants King and Higginbotham and does not explain why they are entitled to qualified immunity. Taken in the light most favorable to Plaintiff, the allegations that Defendants King and Higginbotham searched Plaintiff's home without a warrant or her consent is sufficient to state a violation of the Fourth Amendment. Likewise, taken in the light most favorable to Plaintiff, the allegation that these Defendants failed to return personal items that do not appear to be evidence of criminal activity is also sufficient to state a violation of the Fifth Amendment. The Federal Defendants' motion to dismiss these claims as barred by qualified immunity is DENIED.

On the other hand, Plaintiff has presented no argument that Defendants King and Higginbotham violated her constitutional rights by buying her a meal. Plaintiff's allegation that Defendants King and Higginbotham conspired with Defendant Berry to obtain indictments is entirely conclusory. If this allegation means that Defendants King and Higginbotham presented the results of their investigations to Defendant Berry for use in the criminal cases

28

against Plaintiff, Plaintiff has made no argument that there has been a violation of any constitutional right. The Court GRANTS the Federal Defendants' motion to dismiss these claims as barred by qualified immunity.

The defects identified in the Federal Defendants' motion to dismiss cannot be cured by amendment. Therefore, the Court DISMISSES the complaint against the Federal Defendants WITH PREJUDICE.

It is also necessary to address the status of the claims against the remaining defendants. State Farm has answered the complaint. Defendants Gray, Watson, and Dood have not appeared in this matter. The complaint purports to assert claims under 42 U.S.C. §§ 1983, 1985(2) & (3), and 1986. The complaint does not assert valid claims under those statutes against the remaining defendants.

As previously stated, see supra p. 16, 42 U.S.C. § 1983 provides a right of action against state officials who violate a plaintiff's rights under the U.S. Constitution or federal law. "A § 1983 plaintiff may not sue purely private parties." Brotherton v. Cleveland, 173 F.3d 552, 567 (6th Cir. 1999). Thus, "[i]n order to be subject to suit under § 1983, [a] defendant's actions must be fairly attributable to the state." Collyer v. Darling, 98 F.3d 211, 231-32 (6th Cir. 1997). State Farm is a private corporation that is not alleged to act under color of state law. The complaint also does not allege that Defendants Watson and Dood, private individuals who were involved in automobile accidents with Plaintiff and who,

presumably, filed police reports about threatening communications and identity theft, acted under color of state law. Therefore, none of these defendants can be sued under § 1983.[23]

Moreover, Plaintiff's § 1983 claim is time barred. A one-year statute of limitations is applicable to § 1983 actions in Tennessee. Tenn. Code Ann. 28-3-104(a); see Wilson v. Garcia, 471 U.S. 261, 266-268 (1985); Bernt v. Tennessee, 796 F.2d 879 (6th Cir. 1986). The actions by Defendants State Farm, Gray, Watson, and Dood occurred between 1990, when the accidents occurred, and 1998, when the federal criminal charges were dismissed without prejudice and Plaintiff was committed to a psychiatric institution. Plaintiff filed her Civil Warrant more than ten (10) years after the expiration of the limitations period.

Therefore, the Court DISMISSES the § 1983 claim against Defendants State Farm, Gray, Watson, and Dood pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's amended complaint also asserts a claim under 42 U.S.C. § 1985(2), which provides as follows:

> (2)  Obstructing justice; intimidating party, witness, or juror
>
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of

---

[23]    Defendant Gray, a Memphis police officer, does act under color of state law. The amended complaint contains no factual allegations about Defendant Gray and, therefore, it appears that Plaintiff has abandoned her claims against him.

his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985(2) consists of two separate provisions, separated by a semicolon. Williams v. St. Joseph Hosp., 629 F.2d 448, 451 (7th Cir. 1980). See generally Kush v. Rutledge, 460 U.S. 719, 724-25 (1983). "The first clause of § 1985(2) . . . forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court, or influencing or punishing federal jurors." Warner v. Greenebaum, Doll & McDonald, 104 F. App'x 493, 497 (6th Cir. 2004); see also Miller v. Dowagiac Police Dep't, No. 9602141, 1997 WL 640127, at *5 (6th Cir. Oct. 14, 1997); Alexander v. Patterson, No. 92-6434, 1994 WL 419592, at *1 (6th Cir. Aug. 10, 1994) (citing Rutledge v. Arizona Bd. of Regents, 859 F.2d 732, 735 (9th Cir. 1988)). Plaintiff's amended complaint does not state a claim under the first clause of § 1985(2). The only federal-court action at issue is the two federal criminal cases against Plaintiff, and the complaint does not allege that any defendant attempted to deter Plaintiff from attending and testifying

31

or attempted to punish her for having done so. There also was no attempt to influence, or injure, a federal juror.

The second clause of § 1985(2) "applies to conspiracies to obstruct the course of justice in state courts." Bragg v. Madison, 20 F. App'x 278, 285 (6th Cir. 2001). To state a claim under the second part of § 1985(2), "'there must be some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' actions.'" Williams, 629 F.2d at 451 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see also Kush, 460 U.S. at 726. Although the complaint alleges that Defendants State Farm, Watson, and Dood conspired to obstruct justice in state court, there is no allegation that they acted with any discriminatory animus.[24]

The complaint also does not assert a valid claim under 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

---

[24]   The complaint contains no factual allegations against Defendant Gray.

32

Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999); see also Center for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 832 (6th Cir. 2007). The complaint does not allege that "Defendants acted with discriminatory animus based on a constitutionally protected classification." Center for Bio-Ethical Reform, Inc., 477 F.3d at 832; see also Dunn v. State of Tenn., 697 F.2d 121, 124 (6th Cir. 1982).

Plaintiff's amended complaint also asserts a claim under 42 U.S.C. § 1986, which provides as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

A claim under 42 U.S.C. § 1986 is entirely derivative of a valid claim pursuant to 42 U.S.C. § 1985. Bass, 167 F.3d at 1051 n.5. Because the Court has dismissed the claims under §§ 1985(2) & (3), she cannot prevail on a claim under 42 U.S.C. § 1986.

Finally, as previously stated, see supra p. 17 n.15, the claims under 42 U.S.C. §§ 1985(2) & (3) and 1986 are not timely.

For all the foregoing reasons, the Court DISMISSES the claims under 42 U.S.C. §§ 1985(2) & (3) and 1986.

Because all claims against all parties have been dismissed, the complaint is DISMISSED WITH PREJUDICE. Judgment shall be entered for Defendants.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should she seek to do so. The United States Court of Appeals for the Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that, if a party seeks pauper status on appeal, she must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in

34

good faith, or otherwise denies leave to appeal _in forma pauperis_, the plaintiff must file her motion to proceed _in forma pauperis_ in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. _Coppedge v. United States_, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. _Id._ at 445-46. The same considerations that lead the Court to grant Defendant Olson's motion to dismiss also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal _in forma pauperis_. Leave to proceed on appeal _in forma pauperis_ is, therefore, DENIED. If Plaintiff files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to proceed _in forma pauperis_ and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

In an order entered on January 24, 2007, United States District Judge J. Daniel Breen revoked Plaintiff's ability to file any more actions in this district without payment of the full civil filing fee. _Smith v. Dell, Inc._, No. 06-2496-JDB-dkv (W.D. Tenn.). Those restrictions were imposed because Plaintiff had filed fifteen (15) civil actions in this district since 2003, most of which had been dismissed, _sua sponte_, for failure to state a claim or as

35

frivolous. The sanctions order did not address cases filed in state court and removed to federal court. On May 20, 2010, United States District Judge Bernice B. Donald issued an order that modified the previous restrictions and imposed further restrictions applicable to removed cases. <u>Smith v. Federal Judges & Court Clerks, Memphis, TN</u>, No. 09-2772-BBD-dkv (W.D. Tenn.). The Court REAFFIRMS the sanctions imposed in case number 09-2772.

**THE CLERK IS DIRECTED NOT TO FILE ANY FURTHER DOCUMENTS SUBMITTED IN THIS CASE EXCEPT FOR A NOTICE OF APPEAL.**

IT IS SO ORDERED this 21st day of June, 2010.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE